## DYSART v. WICHITA FALLS, R. & Ft. W. RY. CO. (No. 9386.)

(Court of Civil Appeals of Texas. Ft. Worth. March 27, 1920.)

1. **Eminent domain ⬅188—Names on bond to obtain possession held signed as sureties.**

Where bond of railroad company to obtain possession of land pending appeal by landowner from judgment of condemnation is signed by the company and two individuals, the names of the individuals are to be taken as signed as sureties.

2. **Trial ⬅84(3)—Objection to bond held not to go to authority of attorneys to sign names of sureties.**

Objection to introduction of bond in evidence, that it was not properly executed or signed by the parties to be bound thereby, does not go to the authority of the attorneys who signed the names of the sureties thereto.

3. **Attorney and client ⬅70—Attorneys signing name of surety to bond presumed authorized.**

As against objection to bond, attorneys by whom names of sureties were signed thereto are presumed authorized to do so.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Injunction suit by J. C. Dysart against the Wichita Falls, Ranger & Ft. Worth Railway Company. From an adverse judgment, plaintiff appeals. Affirmed.

Marks & Flaherty, of Ranger, for appellant. Levy & Evans, of Ranger, for appellee.

CONNER, C. J. This appeal is from an order of the district court of Eastland county denying an application for an injunction to restrain the appellee railway company from taking possession of certain real property described in the plaintiff's petition. Briefly stated, the plaintiff, J. C. Dysart, alleged that he was the owner of certain real property, describing it, situated in the city of Ranger,

in Eastland county, upon which he had erected a building 37x140 feet, two stories high, and used by him as a horse and mule depot and in which he had some 13 horses and 20 mules, besides grain and feed. It was further alleged that the railway company, in accord with the law of eminent domain, had filed an application in the county court of Eastland county to condemn the property described, pursuant to which application the judge of said court had appointed certain commissioners, naming them, to assess the damage done to the plaintiff by reason of the construction of a railroad and right of way across the lands of said plaintiff, and that, in accordance with said appointment, the said commissioners met in Ranger, Tex., on the 4th day of December, 1919, for the purpose of ascertaining the damage done to the plaintiff, and that said commissioners, after hearing the evidence relating to the same, assessed the damage to said property at the sum of $8,500, which said award was filed with the clerk of said county court; a certified copy of said award being attached as an exhibit to the petition.

The record discloses that notice was issued to the defendant to appear and show cause why the injunction prayed for by the plaintiff should not be issued, pursuant to which the defendant answered, among other things, to the effect that it, as a railroad corporation, duly incorporated under the laws of Texas, and desiring to construct a railroad along and over the premises of plaintiff, had, in the manner provided by law, applied to the county court for condemnation of the land and premises in controversy for the purpose stated, and that upon said application the court had duly appointed commissioners to assess the damages, before whom the defendant had personally appeared, and that after hearing the commissioners had assessed plaintiff's damages at the sum of $8,500. It was further alleged that the plaintiff being dissatisfied with said award had objected thereto, and that said proceedings had been filed in the county court where they were still pending on appeal; that defendant had deposited the sum of $8,500 with the clerk of the said court subject to the order of the plaintiff and had deposited a further sum of $8,500 to secure any further damage that plaintiff might suffer, and had also executed a bond for the payment of any other costs that might be adjudged against the defendant.

The court, after hearing the evidence, denied the writ, and this appeal from the order denying it has been prosecuted, as before stated.

Our V. S. Tex. Civ. Stats. art. 6504, provides that if at any time a railroad corporation shall be unable to agree with the owner for the purchase of any real estate required for the purpose of its incorporation or the transaction of its business for its depots, station buildings, machine and repair shops, etc., such corporation may acquire such property in the manner provided for in the chapter of which said article is a part. Article 6506 provides that, where the company and the owner cannot agree upon the damages, it shall be the duty of the company to state in writing the real estate and property sought to be condemned, the object for which the same is sought to be condemned, the name of the owner thereof and his residence, if known, and file the same with the county judge of the county in which such property, or a part thereof, is situated. It thereupon becomes the duty of the judge to appoint three disinterested freeholders of the county as special commissioners to assess the damages to the owner of the property. The commissioners are to be sworn to assess such damages fairly and impartially and in accordance with the law. The commissioners are required to appoint a day and place for the hearing, of which notice is to be given to the parties. At the time and place appointed, it is the duty of the commissioners to fully hear the parties and evidence submitted, after which they shall render their award. It is required that the award be reduced to writing and filed together with all other papers connected with the case with the county judge, and, if no objections are filed to the award within ten days, it shall be made the judgment of the court which may issue the necessary process to enforce the same. If either party, however, is dissatisfied with the decision of the commissioners, he may, within 10 days after the same has been filed with the county judge, file his opposition thereto in writing, "setting forth the particular cause or causes of his objection," and thereupon the adverse party shall be cited, and said cause shall be tried and determined as in other civil causes in said court.

Article 6530 reads as follows:

"In no case shall such corporation be entitled to enter upon and take the property condemned, without first having paid whatever amount of damages and costs may have been awarded or adjudged against it by such commissioners, or deposited money to cover the same in the court wherein such condemnation proceedings are pending. But if the plaintiff in the condemnation proceedings should desire to enter upon and take possession of the property sought to be condemned, pending litigation, it may do so at any time after the award of the commissioners, upon the following conditions, to wit:

"First. It shall pay to the defendant the amount of damages awarded or adjudged against it by the commissioners, or deposit the same in money in court, subject to the order of the defendant, and also pay the costs awarded against it.

"Second. In addition thereto, it shall deposit in said court a further sum of money equal to the amount of the damages awarded by the

commissioners, and which shall be held, together with the award itself, should it be deposited in court instead of being paid, exclusively to secure all damages that may be awarded or adjudged against the plaintiff; and it shall also execute a bond with two or more good and solvent sureties, to be approved by the judge of the court in which such condemnation proceedings are pending, conditioned for the payment of any further costs that may be adjudged against it, either in the court below or upon appeal.

"Third. Should it be determined on final decision of the case that the right to condemn the property in question does not exist, the plaintiff shall surrender possession thereof, if he has taken possession pending litigation, and the court shall so adjudge and order a writ of possession for the property in favor of the defendant, and the court may also inquire what damages, if any, have been suffered by the defendant by reason of the temporary possession of the plaintiff, and order the same paid out of the award or other money deposited; provided, that in any case where the award paid the defendant or appropriated by him exceeds the value of the property as determined by the final judgment, the court shall adjudge the excess to be returned to the plaintiff.

"If the cause should be appealed from the decision of the county court, the appeal shall be governed by the same law as in other cases; except the judgment of the county court shall not be suspended thereby. The rules hereinbefore laid down for governing railroad corporations shall likewise apply to all persons and corporations having the right of eminent domain."

The answer of defendant, which was duly verified, and the undisputed evidence, as shown in the agreed statement of facts accompanying the transcript, show that in every particular the appellee railroad company has complied with the requirements of law, as above outlined, for the purpose of condemning the property described in the petition for injunction with one possible exception. The award of the commissioners appointed to assess the damages in the present case was the sum of $8,500, rendered after a full hearing at which appellant appeared. The award was reduced to writing and filed in the county court at which appellant filed his objection, and the cause is there now pending. It is undisputed also that the appellee railroad company deposited the $8,500 specified in the award of the commissioners subject to the order of appellant, and that in addition thereto the appellee company deposited the further sum of $8,500 to secure all damages that may be awarded or adjudged against the railroad company, and further executed a bond, duly approved by the judge of the court, conditioned for the payment of any further costs that might be adjudged against the railroad company in either the county court or upon appeal.

[1-3] The only attack made in this court upon any of the proceedings above outlined is a suggestion that—

"The bond filed by the railroad company is fatally defective and insufficient in that it does not show on its face that there are any sureties who are bound, and without the bond the railroad company has no right to go into possession and the landowner is entitled to injunction," citing Hausmann v. T. B. V. Ry. Co., 82 S. W. 1052.

It was held in the case cited that the failure to file the bond provided for in article 6530 would deprive the railroad company from taking immediate possession of the property. The decision in that case proceeds on the theory that no bond whatever was filed, and is doubtless correct; but in the case before us a bond conditioned as required by the statutes and duly approved by the county judge was filed.

Appellant's criticism is predicated upon the manner in which it was signed. It was signed as follows:

"Witness our hands this 31st day of Dec., A. D. 1919. Wichita Falls, Ranger & Ft. Worth R. R. Co., by Levy & Evans, Attys. Frank Kell, by Levy & Evans, Attys. Jake Hamon, by Levy & Evans, Attys.

"Approved this 31st day of Dec., A. D. 1919. R. L. Bust, Judge County Court at Law, Eastland Co., Texas."

It is evident that the names of Frank Kell and Jake Hamon were signed as sureties, and it is further perfectly plain that if Levy & Evans, who signed those names to the bond, were authorized to do so, the sureties are bound by the terms of the bond. In appellant's petition for injunction there is no allegation of a want of authority on the part of Levy & Evans to sign the names of Kell and Hamon; nor was there any such objection offered by appellant when the bond was offered in evidence. Upon the introduction of the bond in evidence, as shown by the bill of exception presented in the record, the bond was objected to on the ground that it "was not properly executed or signed by the parties to be bound thereby." The objection was overruled by the judge, who held the hearing upon the application for the writ. Under such circumstances, we do not think the issue of a want of authority on the part of the attorneys, who signed the names of the sureties to the bond, is raised. Under such circumstances, and in the condition of the record, we think we must assume that the names of the sureties were properly signed and that they are duly bound on the bond; it being undoubtedly true that a bond of the kind may be properly executed by a duly authorized agent.

In Mechem on Agency, vol. 1, § 268, it is said:

"The ordinary conduct of men, and the inherent improbability of the given act occurring if it were not authorized, may also furnish prima facie evidence. Thus if I write to a business house concerning a matter of business,

and receive in due course a reply to my letter, purporting to be made through a manager, superintendent, or other agent or officer within whose department such a matter would ordinarily lie, a presumption that he so replied with the authority of his principal would arise which would suffice until evidence to the contrary was offered. If I buy a harvesting machine under a contract providing that, in case of trouble, I shall notify the home office and give opportunity for an expert to come to cure the difficulty, and I write such a letter and in due course a man appears who purports to have been sent by the seller in pursuance of my letter, a similar presumption would arise that he came with the authority of the seller. So, also, it has been held—though there are contrary holdings—that if I call a business house by telephone upon a proper matter of business with it, and receive in due course what purports to be the authorized response of one in charge, a similar presumption that the response is authorized attends this transaction."

The same authority, in volume 2, § 2152, says:

"An attorney, as has been seen, is an officer of the court, and is responsible to the court for the propriety of his professional conduct, and for the proper exercise of his privileges as such. It is the presumption of the law that he will not violate his duty, or impose upon the court with a false appearance of authority."

It follows, we think, that it cannot be said that the court below abused his discretion in refusing the writ of injunction, and it is accordingly ordered that the judgment below be in all things affirmed.